IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORHERN DIVISION

| | | |
|---|---|---|
| **DIANE SMITH** | * | |
| 108 Butler Drive | * | |
| Mooresville, NC 28115 | * | |
|    **Plaintiff,** | * | |
| | * | |
| v. | * | Civil Action #: _____ |
| | * | |
| **ATOS IT SOLUTIONS AND SERVICES, INC.** | * | |
| 11480 Commerce Park Drive, Suite 210 | * | |
| Reston, VA 20191 | * | **Jury Trial Requested** |
|    **Defendant** | * | |
|       Serve on Resident Agent: | * | |
|       CSC-Lawyers Incorporating | * | |
|       Service Company | * | |
|       7 St. Paul Street – Suite 820 | * | |
|       Baltimore, MD 21202 | * | |

********************************************************************************

## COMPLAINT

Plaintiff Diane Smith respectfully files this Complaint because she was the victim of employment discrimination by her former employer, the Defendant ATOS IT Solutions And Services, Inc. ("Atos"). The U.S. Equal Employment Opportunity Commission has already determined that there is probable cause that Ms. Smith was unlawfully discriminated against. A copy of the EEOC determination is attached as Exhibit 1.

### STATEMENT OF FACTS

**The Parties**

1. Ms. Smith is female and African-American.

2. Ms. Smith was employed by Atos in Frederick, Maryland,, starting in July 2015 and ending in January 2017.

3. Ms. Smith worked for Atos at the Marriott Global Network Operations Center in Frederick, Maryland.

4. Ms. Smith was employed by Atos, first as a Night Supervisor for the Marriott account and then as  the Manager of the Global Networks Operations Center in Frederick, Maryland.

5. Ms. Smith has retired from employment.

6. Defendant Atos is a for-profit corporation.

7. Defendant Atos markets itself as an industry leader in providing digital services to organizations and businesses

8. Defendant Atos, during Ms. Smith's employed more than 100,000 employees in approximately 72 countries.

9. Defendant Atos had earnings of more than $1 billion during each year of Ms. Smith's employment.

10. Defendant Atos conducted significant business in the State of Maryland during Ms. Smith's employment and continues to do so.

**Pertinent Employment Facts**

11. Ms. Smith was subjected to unlawful pay discrimination when she was employed as the Operations Manager of the Global Networks Operations Center in Frederick, Maryland.

12. Ms. Smith started as the night-shift Operations Manager in July 2016.

13. Defendant did not increase Ms. Smith's salary when she was promoted to the day-shift Operations Manager.

14. When promoted, Ms. Smith's salary remained fixed at $68,000, the same salary she made in her prior less demanding role.

15. The person who preceded Ms. Smith in the Operations Manager position was a male, and is not African-American. (This person hereinafter is referred to as "E.I.")

16. Ms. Smith was paid less than E.I. despite doing the same job.

17. Defendant paid E.I. at least $1100,000 when he was Operations Manager.

18. The person who preceded E.I. in the Operations Manager position was not African-American and is male. (This person hereinafter is referred to as "M.M.").

19. Ms. Smith was paid less than M.M. despite doing the similar job.

20. Defendant paid M.M. at least $140,000 when he was Operations Manager.

21. E.I. and M.M. reside in the State of Maryland.

22. A male who was younger than Plaintiff was hired as a Critical Situation Manager, ("CSM") in approximately August 2016, who hereinafter is referred to as "K.S.".

23. CSMs worked under and reported to Ms. Smith.

24. K.S. was paid more than Ms. Smith when he was hired as a CSM.

25. In December 2016, K.S. was promoted to assume the Operations Manager position vacated by Ms. Smith,

26. K.S. was promoted to Operations Manager at a starting salary of $99,000.

27. K.S. was paid more than Ms. Smith when he worked as the Operations Manager.

28. Defendant also gave K.S. a pay raise after nine months of employment with Defendant.

29. Several of Ms. Smith's subordinates, whom she supervised, were paid substantially more than Ms. Smith, and  were of a different race and/or gender.

30. Ms. Smith hired at least five employees employed as CSMs.

31. Defendant started two of the subordinate CSMs at a rate of $90,000 a year. They were of a different race and/or gender than Ms. Smith.

32. Four of the five CSMs were paid more than Ms. Smith.

33. The only CSM that Ms. Smith hired that was not paid more than her was another female.

34. Ms. Smith had greater scope of responsibilities and authority than the subordinates.

35. The subordinates reported directly to Ms. Smith.

36. Ms. Smith did her job well for Defendant.

37. Ms. Smith never received any discipline or counseling from Defendant.

38. Ms. Smith's performance was exemplary.

39. Ms. Smith received positive evaluations from Defendant.

40. Ms. Smith reported to Defendant that she was underpaid and asked to be paid more.

41. Ms. Smith reported that she was aware that the predecessors in the Operations Manager position had been paid more.

42. Ms. Smith reported that she knew that the subordinates were paid more than she was.

43. Ms. Smith reported that Defendant made her hire subordinates who were paid more than she was.

44. In its position statement to the EEOC, Defendant did not contend that E.I., K.S. and/or M.M. did not perform similar work.

45. In its position statement to the EEOC, Defendant did not contend that that Ms. Smith's subordinate employees had greater duties, responsibilities and authority than Ms. Smith.

46. Ms. Smith repeatedly and civilly informed Defendant of the pay disparities and inequities and requested that her compensation be increased to at least the amount of her predecessor employees.

47. Defendant offered pretextual reasons for the pay discrimination and failed to raise her salary to at least that of her predecessor Operation Managers, or to even that of her subordinates.

48. The failure to increase Ms. Smith's pay to remedy the unlawful pay discrimination constituted adverse employment actions.

49. Defendant's setting Ms. Smith pay at the discriminatory rate constituted an adverse pay action.

50. Ms. Smith was qualified to work in the Operations Manager position.

51. In July 2016, Ms. Smith informed Defendant of her resignation.

52. Ms. Smith reported to local management that she could not continue to work for Defendant if Defendant did not remedy the pay disparity.

53.  Ms. Smith reported to local management that she was aware that subordinates were being paid more than she was.

54. Prior to submitting her resignation Ms. Smith had repeatedly requested that Defendant remedy the pay disparity for a year.

55. Ms. Smith spoke with her supervisor M.M. about the pay disparity multiple time per month during her employment.

56. Defendant never remedied the pay disparity.

57. In her resignation, Ms. Smith reported that the work environment had become so intolerable that she was forced to resign. –The workplace became intolerable due to Defendant's repeated failure to stop the discrimination and remedy the inequity in compensation.

58. Ms. Smith reported that work environment was causing her undue stress and worry.

59. Ms. Smith's local management asked her to reconsider her resignation.

60. Local management assured Ms. Smith that she was highly valued and viewed as great asset to Defendant.

61. Local management indicated that they would try to convince "corporate" to pay her equitably.

62. Local management acknowledged that she was paid less than others who did less work, and who were of a different race or gender.

63. In September 2016, Defendant increased Ms. Smith's salary to approximately $72,000, after 13 months of employment.

64. However, even with the salary increase, the Defendant still had paid a higher salary to her two immediate predecessors and the subordinates.

65. Multiple subordinates working under Ms. Smith still made over $20,000 more than Ms. Smith after her salary increase.

66. Ms. Smith remained being paid substantially less than her predecessors and the subordinates.

67. Defendant's conduct further humiliated Ms. Smith.

68. Defendant's conduct of giving Ms. Smith a $4,000 raise only served to emphasize the pay disparity between her and the predecessors and the subordinates, who were all of a different race and/or gender and made her working environment even more intolerable.

69. Ms. Smith's local management indicated that they could not offer any legitimate excuses for Defendant allowing the pay disparities to continue.

70. The work environment became even worse and more stressful for Ms. Smith.

71. Defendant demanded that Ms. Smith work excessively and manage its significant operations; yet it continued to discriminate against Ms. Smith.

72. Ms. Smith continued to ask local management to assist in righting the wrong; but Defendant continued to refuse to correct the continued pay disparity.

73. Ms. Smith reasonably felt abandoned by Defendant.

74. Ms. Smith was humiliated by Defendant's conduct.

75. Ms. Smith suffered stress and anxiety due to Defendant's conduct.

76. Ms. Smith had a reasonable belief that her predecessors and subordinates, all of whom were a different gender and/or race, knew she was paid less than they were, and that caused her to experience humiliation and stress on a daily basis.

77. The pay disparity, Defendant's refusal to correct the pay disparity, and the humiliation, stress, and anxiety that Ms. Smith experienced on a daily basis because of it, rendered Ms. Smith's work environment intolerable.

78. Ms. Smith had no choice but to end her employment with Defendant in January 2017.

79. Ms. Smith was constructively discharged.

80. Defendant failed to stop the discrimination.

81. Defendant exploited Ms. Smith for its own self-interests.

82. Defendant's conduct was reckless, if not intentional, and done with malice and in complete disregard of Ms. Smith's civil rights.

83. Ms. Smith suffered compensatory damages because of the discrimination.

84. Ms. Smith suffered loss of wages and benefits due to the discrimination.

**EEOC Actions**

85. Ms. Smith filed a Charge with the U.S. EEOC in July 2017, a copy of which is attached hereto as Exhibit 2.

86. The EEOC issued a written determination, finding reason to believe that Ms. Smith was discriminated against due to her gender and race.

87. Defendant did not agree to settle this dispute during the EEOC conciliation process.

88. On May 16, 2022, the EEOC issued Ms. Smith a right-to-sue notice.

89. This case has been filed within 90 days from the issuance of the EEOC's right-to-sue notice.

<u>VENUE & JURISDICTION</u>

90. Venue is proper because the unlawful acts occurred in this District.

91. Plaintiff resided in this District when the lawful acts occurred.

92. Defendant did substantial business in Maryland during Ms. Smith's employment.

93. Defendant continues to do business in Maryland.

**VIOLATIONS OF LAW:**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED,**
**42 U.S.C. § 2000 et seq. (RACE & GENDER DISCRIMINTION)**

**Count I – Race Discrimination – Pay & Constructive Discharge**

94. All allegations of this Complaint are expressly included in this Count I.

95. Ms. Smith is African American.

96. Defendant discriminated against Ms. Smith in the terms of her pay based on her race.

97. Defendant subjected Ms. Smith to unequal pay because of her race.

98. Ms. Smith, as an African American, was paid less than her predecessor employees, who were not African American, for performing similar work in the similar position that she held.

99. Ms. Smith as an African American, was paid less than her subordinate employees, who were not African American, even though she performed more work and held more responsibility than the subordinate employees.

100. Ms. Smith performed her job well and surpassed Defendant's expectations.

101. Ms. Smith was paid less than her predecessor and subordinate employees because of her race.

102. Ms. Smith complained to the Defendant for over a year, monthly, about the continuing pay disparity.

103. Defendant failed to resolve the pay disparity in spite of Ms. Smith's repeated requests that it do so.

104. Ms. Smith suffered humiliation, stress, and anxiety because of the continued pay disparity because of her race.

105. Ms. Smith suffered humiliation, stress, and anxiety because of Defendant's refusal to remedy the continued pay disparity because of her race.

106. Defendant offered pretextual reasons for the discrimination.

107. Ms. Smith's work environment was intolerable because of the daily humiliation, stress, and anxiety caused by Defendant's refusal to remedy the continued pay disparity because of her race.

108. Ms. Smith was forced to resign because her work environment was so intolerable as a result of the daily humiliation, stress, and anxiety caused by Defendant's refusal to remedy the continued pay disparity because of her race.

109. Ms. Smith's resignation constitutes constructive discharge.

110. Ms. Smith's constructive discharge was an adverse employment action.

111. Relief requested – Ms. Smith requests that she be made whole for the damage caused to her by Defendant's unlawful discrimination. Ms. Smith asks respectfully that she be awarded: (a) lost wages and the denied equal pay, and benefits; (b) compensatory and punitive damages; (c) attorney fees and costs; and (d) pre- and post-judgment interest.

**Count II – Gender Discrimination - Pay & Constructive Discharge**

112. All allegations of this Complaint are expressly included in this Count II.

113. Ms. Smith is a female.

114. Ms. Smith performed her job well and surpassed Defendant's expectations.

115. Defendant discriminated against Ms. Smith in the terms of her pay based on her gender.

116. Defendant subjected Ms. Smith to unequal pay because of her gender.

117. Ms. Smith, as a female, was paid less than her predecessor employees, who were males, for performing the similar  work in the similar position that she held.

118. Ms. Smith, as a female, was paid less than her subordinate employees, who were males, even though she performed more work and held more responsibility than the subordinate employees.

119. Ms. Smith was paid less than her predecessor and subordinate employees because of her gender.

120. Ms. Smith complained to the Defendant for over a year, monthly, about the continuing pay disparity.

121. Defendant failed to resolve the pay disparity in spite of Ms. Smith's repeated requests that it do so.

122. Ms. Smith suffered humiliation, stress, and anxiety because of the continued pay disparity because of her gender.

123. Ms. Smith suffered humiliation, stress, and anxiety because of Defendant's refusal to remedy the continued pay disparity because of her gender.

124. Defendant offered pretextual reasons for the discrimination.

125. Ms. Smith's work environment was intolerable because of the daily humiliation, stress, and anxiety caused by Defendant's refusal to remedy the continued pay disparity because of her gender.

126. Ms. Smith was forced to resign because her work environment was so intolerable as a result of the daily humiliation, stress, and anxiety caused by Defendant's refusal to remedy the continued pay disparity because of her gender.

127. Ms. Smith's resignation constitutes constructive discharge.

128. Ms. Smith's constructive discharge was an adverse employment action.

129. Relief requested – Ms. Smith requests that she be made whole for the damage caused to her from Defendant's unlawful discrimination. Ms. Smith asks respectfully that she be awarded: (a) lost wages and the denied equal pay, and benefits; (b) compensatory and punitive damages; (c) attorney fees and costs; and (d) pre- and post-judgment interest.

Respectfully submitted,

_____
Stephen Lebau, Bar #07258
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1203
fax. 410.296.8660
sl@joblaws.net

_____
Devan M. Wang, Bar #30211
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1207
fax. 410.296.8660
dw@joblaws.net

*Attorneys for the Plaintiff*

## REQUEST FOR JURY TRIAL

Plaintiff requests that a jury of her peers hear and decide the claims asserted in this Complaint.

Stephen Lebau, Bar #07258